UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| DANA JACKSON, | Case No. 19-cv-2392 (PJS/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| HENNEPIN HOSPITAL and KELLEY MARKS, | |
| Defendants. | |

This matter is before the Court on Plaintiff Dana Jackson's (1) Complaint (Dkt. 1);[1] (2) Application to Proceed in District Court Without Prepaying Fees or Costs (Dkt. 2 ("IFP Application")); and (3) Motion Requesting Service Upon Defendants (Dkt. 3 ("Service Motion")).  For the following reasons, the Court recommends dismissing the Complaint, denying the IFP Application, and denying the Service Motion as moot.

## I.   BACKGROUND

The Complaint appears to describe Jackson's interactions at an entity referred to alternatively as "Hennepin Hospital" and "Hennepin County Medical Center."  (*See* Dkt.

---

[1]    Because the Complaint is not consecutively paginated, the Court refers to the document using the page numbers assigned by the Court's CM/ECF filing system.

1 at 1-2, 4-5.[2]) Documents attached to the Complaint suggest that this visit took place in August 2019. (*See* Dkt. 1-1 at 3.[3])

With respect to Hennepin Hospital, Jackson states that its conduct toward her comprised "an entrapment that caused [her] hardship mentally physically and in technicality." (Dkt. 1 at 8 (errors in original).) She alleges that hospital staff forced injections upon her, and did so contrary to how the relevant medications were actually prescribed. (*See id.*) At least once, she alleges, she was forcibly restrained as part of the process of administering her medication; she states that this was a "direct violation[]" of her "patient rights." (*Id.*)

---

[2] At one point in the Complaint, Jackson suggests that "Hennepin County Medical Center" is a defendant in this action. (*See* Dkt. 1 at 4.) After reviewing the Complaint, however, the Court believes that its references to Hennepin County Medical Center are meant to refer to the "Hennepin Hospital" entity. (*Compare id.*, *with id.* at 1, 2, 5. The Court thus will not analyze Hennepin County Medical Center as a separate defendant.

[3] Jackson submitted about thirty pages of exhibits alongside the Complaint. (*See generally* Dkt. 1-1, 1-3.) To the extent that Jackson wants the Court to review this material to determine what allegations might apply to Defendants, the Court declines the invitation. It is for Jackson—not the Court—to craft a complaint. The Court will not look through the exhibits to determine what allegations they suggest or to find possible causes of action against the Defendants. *See, e.g.*, *Murrin v. Avidigm Capital Grp., Inc.*, No. 07-cv-1295 (PJS/RLE), 2008 WL 11463468, at *10 (D. Minn. Sept. 5, 2008) (declining to look through documents to find "evidence that might establish a prima facie case" for certain claims); *see also Elias v. Lichinov*, No. 19-cv-7457 (MWF/JC), 2019 WL 4140983, at *2 (C.D. Cal. Aug. 29, 2019) ("To the extent plaintiff may believe that the contents of his supporting documents establish that he has somehow stated a viable claim, he is mistaken. It is not the Court's responsibility to sift through plaintiff's multiple submissions in an attempt to glean whether plaintiff has an adequate basis upon which to state a viable claim.") (citing *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1066 (9th Cir. 2009)).

Jackson also states that Hennepin Hospital "put notes in the medical records that will cause anyone who asks for a release of information by Authorization form will cause bad effects to occur and a view of what kind of person I am will be taken falsely and cause me to seem as a menace or a troublesome person . . . ." (*Id.* (errors in original).) The Complaint is not entirely clear, but Jackson apparently believes that Hennepin Hospital is at least partly responsible for her present homelessness. (*See id.*) Jackson also appears to suggest that Hennepin Hospital has committed malpractice and is breaching the Health Insurance Portability and Accountability Act ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996) (codified as amended in scattered sections of 18, 26, 29, and 42 U.S.C.). (*See id.*)

From these allegations, the Court—given its obligation to construe the filings of pro se litigants liberally, *see Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014)—construes Jackson as raising four causes of action against Hennepin Hospital: (1) assault, (2) defamation,[4] (3) medical malpractice, and (4) one or more HIPAA violations. Furthermore, the Complaint's jurisdictional section suggests that a basis for federal subject matter jurisdiction in this action is a purported violation of the

---

[4] Jackson uses the term "slander" (*see* Dkt. 1 at 7), but defamation would appear to be the more appropriate cause of action under Minnesota law. *Cf. McGuire v. Bowlin*, 932 N.W.2d 819, 823 (Minn. 2019) (stating that elements of defamation claim under Minnesota law are "(1) that the defendant made a false and defamatory statement about the plaintiff; (2) that the statement was an unprivileged publication to a third party; (3) that the statement had a tendency to harm the plaintiff's reputation in the community; and (4) that the defendant was at fault (at least negligent)").

Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-213.  The Court will therefore consider this as a fifth possible cause of action against Hennepin Hospital.

As for Defendant Kelley Marks, the Complaint alleges that she worked at Hennepin Hospital when Jackson was a patient there.  (*See* Dkt. 1 at 7.)  Jackson alleges that during her visit, Marks "did not give [Jackson] legal or formal status when discharging [Jackson]." (*Id.*)

Jackson also describes a verbal altercation that she (Jackson) had with another patient about food storage in a refrigerator.  (*See id.*)  Marks apparently took the other patient's side in the dispute, "intervened in front of all the residents blaming [Jackson] for every part and suggesting that [Jackson needed] to leave." (*Id.*)  As best as the Court can tell, this conflict led to Jackson's discharge from the facility.  (*See id.*)  Jackson contends that Marks "affirmed that [Jackson had] to be out on the streets," notwithstanding Jackson's "mental [incapacities]," and that Marks also "would not help [Jackson] any further than to have someone provide [her] a grievance that [Jackson] was not competent to fill out at that time." (*Id.*)

Jackson further alleges that Marks "took sole responsibility to write into [Jackson's] medical records and discharge all herself." (*Id.* (errors in original).)  Jackson suggests that this activity violated HIPAA; she elsewhere suggests that Marks "has been very negligent to HIPAA and caused [Jackson] cognitive dissonance." (*Id.* at 8.)

Given these allegations, the Court construes Jackson as claiming that Marks violated Jackson's rights under HIPAA.  The Court will also give Jackson the benefit of the doubt and construe her to be claiming that Marks engaged in medical malpractice

4

when she (again, as the Court understands it) ordered that Jackson be discharged. As with Hennepin Hospital, the Court will also consider whether Jackson has stated a cause of action against Marks with respect to the ADA.

For relief, Jackson seeks $22 million in monetary compensation. (*See id.* at 6, 8.)

## II.     ANALYSIS

**A.     Screening Standards**

Rather than pay this action's filing fee, Jackson moved for permission to proceed *in forma pauperis* (IFP) in this action. (*See* Dkt. 2.) After review, the Court concludes that Jackson qualifies financially for IFP status. But an IFP application will be denied—and an action dismissed—when an IFP applicant has filed a complaint that fails to state a cause of action on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam); *Carter v. Schafer*, 273 F. App'x 581, 582 (8th Cir. 2008) (per curiam) ("[T]he provisions of 28 U.S.C. § 1915(e) apply to all persons proceeding IFP and are not limited to prisoner suits, and the provisions allow dismissal without service."). The Court must therefore determine whether the Complaint states a cause of action for which this Court can grant relief.

In reviewing whether the Complaint states a claim for which relief may be granted, this Court must accept its factual allegations as true and draw all reasonable inferences in Jackson's favor. *See Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). The Complaint's factual allegations need not be detailed, but must be enough to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Complaint must "state a claim to relief that is plausible on its

face." *Id.* at 570. In assessing the Complaint's sufficiency, this Court may disregard legal conclusions couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Pro se complaints are to be construed liberally, but must still allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citing cases).

**B.    ADA Claims**

The Court will begin with Jackson's federal law claims. Of Jackson's causes of action, only two sound in federal law: her claims that Defendants violated the ADA and her claims that Defendants violated HIPAA.

Jackson's ADA claims are hard to decipher; she does not allege what ADA provision Defendants supposedly violated. (*See* Dkt. 1 at 5, 7-10.) The most relevant ADA provision appears to be 42 U.S.C. § 12132, under which "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." To plead a § 12132 violation, a plaintiff must allege that (1) she is a qualified individual with a disability; (2) she was "excluded from participation in or denied benefit of [a] public entity's services, programs, or activities, or was otherwise discriminated against"; and (3) the discrimination "was because of disability." *List v. Cty. of Carroll*, 240 F. App'x 155, 156 (8th Cir. 2007) (citing *Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998)); *see also Richards v. Dayton*, No. 13-cv-3029 (JRT/JSM), 2015 WL 1522199, at *39 (D. Minn. Jan. 30, 2015), *report and recommendation adopted sub nom. Richards v. Ritchie*, 2015 WL 1522237 (D. Minn.

6

Mar. 30, 2015) (reciting similar elements (quoting *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999)).

Even if the Court assumes—without deciding—that Jackson has sufficiently alleged the first two elements of a § 12132 claim, the Court concludes that Jackson has not stated a § 12132 claim, for the Complaint does nothing to establish that any differential treatment Jackson faced was "because of" (or, to use § 12132's language, "by reason of") her disability. (*See* Dkt. 1 at 7-10.) The Court thus recommends dismissing Jackson's ADA claims without prejudice.

**C.    HIPAA Claims**

Jackson's HIPAA claims are also hard to understand. Her understanding of HIPAA's administrative requirements appears to be based on a website targeted at health-care professionals. (*Compare id.* at 7 (citing website) *with* Insureon, Healthcare in the Age of Data: How to Comply With the HIPAA Security Rule (2019), *at* https://alliedhealth.insureon.com/resources/hipaa/three-components (last accessed Dec. 27, 2019).) Looking at these materials, the Court is unsure what provisions of HIPAA (or its implementing regulations) Jackson believes were violated.

This is a moot point, though, because "HIPAA does not create a private right of action." *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010) (citing cases); *see also Nahal v. Allina Health Sys.*, No. 18-cv-631 (DWF/KMM), 2018 WL 6729660, at *5-6 (D. Minn. Oct. 4, 2018) ("HIPAA does not create a private right of action for any violations of the Act . . . ." (citing *Mason v. Minn. Dep't of Human Servs.*, No. 16-cv-2340 (JRT/LIB)), 2017 WL 1555888, at *4 (D. Minn. Apr. 3, 2017)), *report and*

7

*recommendation adopted*, 2018 WL 6727066 (D. Minn. Dec. 21, 2018).  As a result, whatever HIPAA claims Jackson means to assert, she cannot pursue them through a private lawsuit.  The Court thus recommends dismissing Jackson's HIPAA claims with prejudice.

**D.     Remaining State Law Claims**

After the dismissal of Jackson's ADA and HIPAA claims, all that would remain in this action would be state law claims—i.e., claims of assault, defamation, and medical malpractice against Hennepin Hospital, and a claim of medical malpractice against Marks.  This raises the question of whether this Court should exercise supplemental jurisdiction over these state law claims after dismissal of the Complaint's federal law claims.

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  Section 1367(c)(3) specifies, however, that a district court "may decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if . . . the district court has dismissed all claims over which it has original jurisdiction."

The U.S. Court of Appeals for the Eighth Circuit has discussed these provisions as follows:

> A federal district court has discretionary power to decline the exercise of supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction.

8

> The factors a court should consider in determining whether to exercise jurisdiction over pendent state law claims are judicial economy, convenience, fairness, and comity. In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.

*Wilson v. Miller*, 821 F.3d 963, 970-71 (8th Cir. 2016) (cleaned up).

In this case, the *Wilson* quote's last sentence is key. Under this Court's recommendation, Jackson's federal law claims will all be "eliminated" well before trial. There is no indication that this case would be "unusual" in any way that would support exercising supplemental jurisdiction after dismissal of this case's federal law claims. The Court thus recommends declining to exercise supplemental jurisdiction over Jackson's state law claims, and thus dismissing those claims without prejudice for lack of subject matter jurisdiction.

**E.    IFP Application and Service Motion**

Because the Court recommends dismissal of all of the claims within the Complaint, the Court further recommends that the IFP Application be denied, and that the Service Motion be denied as moot.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS RECOMMENDED THAT**:

   1.   The claims in Plaintiff Dana Jackson's Complaint (Dkt. 1) based on the Americans with Disabilities Act of 1990 be **DISMISSED** without prejudice.

2. The Complaint's claims based on the Health Insurance Portability and Accountability Act be **DISMISSED** with prejudice.

3. The Complaint's remaining claims be **DISMISSED** without prejudice for lack of subject matter jurisdiction.

4. Jackson's Application to Proceed in District Court Without Prepaying Fees or Costs (Dkt. 2) be **DENIED**.

5. Jackson's Motion Requesting Service Upon Defendants (Dkt. 3) be **DENIED** as moot.

Dated: January 3, 2020         *s/Elizabeth Cowan Wright*
                               ELIZABETH COWAN WRIGHT
                               United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).